## JOHN GIBSON ET AL. *v.* THE STATE.

1. ACTION ON TAX COLLECTOR'S BOND. *Attorney's authority. Demurrer.*
   In a suit on a tax collector's bond for his failure to pay over privilege taxes collected, the question whether the attorney who brings the suit is authorized by the State's agents, being one of fact, cannot be raised by demurrer to the declaration.

2. SAME. *Continuance. Absent co-defendant. Laches.*
   Continuance should be refused, if applied for in order to obtain the testimony of a co-defendant with the applicant who has negligently omitted to take a subpœna in time for service before the regular trial day under the rules of practice.

3. SAME. *New trial. Public record.*
   A new trial should not be granted to enable the sureties to obtain from the auditor's office a statement of the collector's account, because they could by the exercise of ordinary diligence have obtained a copy of this public record before trial.

4. SAME. *Evidence. Privilege licenses.*
   Blank privilege licenses, furnished by the auditor of public accounts to the collector, should not be admitted in evidence, if the suit is based on an account for privilege taxes collected, and not paid over, in which such licenses do not constitute items.

5. ACTION ON TAX COLLECTOR'S BOND. *Suppressing evidence.*
   If the collector has abstracted the record of his receipts and payments of
      taxes required in Code 1880, §§ 517, 518, 519, his sureties cannot re-
      quire that the State, after establishing his collection of the amount
      claimed, shall prove that he has not settled it with the auditor.

APPEAL from the Circuit Court of Hancock County.

Hon. J. S. HAMM, Judge.

This is an action of debt upon the tax collector's bond of G.
W. Johnston, late sheriff of Hancock County, for the sum of
two thousand dollars collected by him from privilege tax
payers, during the autumn of 1880, and not paid into the
State treasury. A plea by the sureties that the collector did
not collect the privilege taxes and fail to pay them over was
demurred to, and they excepted to the refusal of the court to
extend the demurrer back to the declaration, upon the ground
that it failed to disclose the authority of the attorney, who
was not a State officer, for instituting the suit. When the case
was called for trial, the sureties moved for a continuance be-
cause of the absence of G. W. Johnston, who knew all the
facts and had important books and papers, and for whom they
had a subpœna issued on the third day of the trial term imme-
diately upon learning that he was absent, and asked time to
reduce their showing to writing, which the court refused and
overruled the motion.

At the trial the State proved that Johnston had collected the
sum sued for, and introduced the evidence set out in the
opinion to show that he had abstracted the record book of col-
lections and payments of taxes to the State, and the sureties
offered some blank privilege licenses, issued by the auditor to
Johnston, which the court excluded from the evidence over
their objection. Being instructed, as stated in the opinion,
that, in order to recover, the State had only to prove that Johns-
ton collected the money, without showing that he failed to pay
over, the jury found for the plaintiff. The sureties then moved
for a new trial, in order that they might get from the auditor
a true statement of Johnston's account with the State, as they
had relied on his attending the trial with all the documents,
and were surprised by his absence. When the court overruled
this motion, the sureties appealed.

*J. B. Deason* and *R. H. Thompson*, for the appellants.

1. Suits for the State must be brought by its authorized officers. Code 1880, § 549; Code 1871, § 1724. This is the public policy manifested by statutes. Actions of the character of this one should be instituted by the district attorney upon the auditor's certificate. The presumption of authority which exists where an attorney sues for a private person has no application to this case. Without this presumption, the declaration fails to disclose the attorney's authority, and is therefore demurrable. *Lewenthall* v. *State*, 51 Miss. 645. No statute authorizes a rule on an attorney to show authority from his client.

2. Collectors settle privileged taxes with the auditor by returning the unused blanks, and paying for such as they are unable to return. If the officer does his duty his payments represent the licenses issued. Tax payers do not pay such taxes without taking the receipts. The sheriff's possession of a large number of such blanks was a circumstance admissible in evidence to show non-collection.

3. The State must prove, in a case like this, not only the collection, but failure to pay over. The suit is based upon a negative allegation, and the rule that the party who maintains the affirmative has the burden of proof, does not apply. *Spieres* v. *Parker*, 1 T. R. 141; *Holmes* v. *Love*, 3 B. & C. 242; *Lane* v. *Crombie*, 12 Pick. 177; *Harvey* v. *Towers*, 15 Jur. 544; 1 Chitty Pl. 206; 1 Greenl. Evid. § 78. If the affirmative is supported by a disputable presumption of law, the party maintaining the negative must call witnesses in the first instance. Taylor's Evid. § 339. Both reasons exist in this case, which is founded upon the charge that a public officer failed to perform his duty. Nothing in the evidence relieved the State of this burden. The instructions upon this point were manifestly erroneous. Evidence of the state of Johnston's account was in the auditor's office, and he could have no motive to abstract his book, leaving full proof behind. No just result could be reached in this case without reference to the auditor's books.

4. Either the continuance should have been granted or a new trial allowed. Johnston was absent, and the sureties were surprised, and taken entirely without evidence. It was the

State's duty to produce the auditor's certificate, and instead of this it introduced unknown witnesses, and proved the claim like an open account. The evidence was secondary and unreliable. An opportunity should be given the sureties to produce the record of the auditor and show the true state of accounts. From the entire record it appears that the appellants did not have a fair trial.

*T. C. Catchings,* Attorney General, for the State.

1. As special counsel can be employed by the governor or the revenue agent, the presumption is that an attorney who brings a suit in the name of the State has such authority. In no event, however, can the point be made by demurrer. It must be by rule on the attorney to show his authority, or by proof that he is not authorized. *Lewenthall* v. *State,* 51 Miss. 645 ; Weeks on Attorneys, § 196.

2. Testimony that the sheriff had in his possession a large number of blank privilege licenses was irrelevant, and was properly excluded. This fact was in no degree inconsistent with the allegation that he issued licenses to the persons named in the bill of particulars and failed to pay over the proceeds. Blanks remaining after he had issued to the persons named, in view of the fact that the use of those for the proceeds of which suit was brought was proved, could not have enlightened the jury, and their exclusion did not injure the defendants.

3. The instructions are correct. But if they were erroneous, it would be immaterial in view of the facts. Evidently the money was collected and not paid over. There is nothing which tends to show the contrary. No matter how instructed, the jury could not do otherwise than find the verdict which they did. The case, therefore, should not be reversed.

COOPER, J., delivered the opinion of the court.

The defendants could not by a demurrer question the authority by which the suit was instituted. A demurrer presents only a question of law for the decision of the court. The issue attempted to be raised by the defendants was one of fact, viz., whether the attorney who brought the action was authorized so to do by the agents of the State. The demurrer was therefore properly overruled.

No error was committed in the refusal to grant a continuance on the application of the defendants. Considering the application as if it had been formally presented by a written petition, sworn to, the continuance should have been refused. The facts stated by the defendants, applying for the continuance, show that they had been guilty of negligence in not having taken a subpœna for their co-defendant, whose testimony they desired, in time to have service thereof made before the day when by the rules of practice the case was triable.

The motion for a new trial should not have been granted, in order that the defendants might thereafter procure from the office of the auditor of the State a statement of the condition of the accounts of their principal. The account, as it appears on the books of the auditor's office, is a matter of public record, required by law to be kept, and the defendants by the exercise of ordinary diligence might have procured a copy thereof before the trial of the cause.

There was no error in excluding, when offered in evidence by the defendants, the blank privilege licenses, which had been furnished by the auditor to the sheriff. If the suit was based on an account against the officer, in which these licenses appeared as a charge against him, the evidence would have been pertinent; but as they are not charged against him in the account sued on, the fact that they still remained in his hands could not in any degree tend to show that he had not collected, or had paid over the amounts for which suit was brought.

The court below, at the instance of the State, instructed the jury that, "in order to recover in this suit, the State is only bound to prove that Johnston, as such tax collector, collected the several sums sued for, and is not bound to prove that he failed to pay over to the State of Mississippi; and it is incumbent on the defendants to prove to their satisfaction that the taxes were paid over, and he receipted for the same." The defendants asked the court to instruct the jury that "the burden of proof in this case is upon the State, and unless the plaintiff has shown by a preponderance of evidence to their satisfaction that the defendant, Johnston, collected the particular amounts sued for, and failed to pay over the same to the State treasury, then they will find for the defendants," which

instruction the court refused to give as asked, but modified it by adding thereto the words, " but in determining the case the jury must take into consideration all the evidence ; and any admission or remission by Johnston, if satisfactorily established that he had not paid over the money collected, is competent to establish the fact that he has not paid over the money." These instructions were in direct conflict with each other, and ought not to have been both given, but unless the error is one of which the appellants have the right to complain, the verdict ought not to be disturbed. It may be admitted that, ordinarily, the burden of proof rests upon the plaintiff, to establish all the material allegations of his declaration, even though they be of a negative character, and therefore that the instruction asked on the part of the defendants ought ordinarily to be given, yet we think, under the peculiar facts shown in this case, the instruction given for the State contained no error of which the appellants can complain.

Chapter 10 of the Code of 1880, " An Act in relation to Public Revenue," went into operation on the 1st day of July, 1880, and was therefore the law of the State when the collections sued for were made by the defendant Johnston, as sheriff of Hancock County. Sections 517, 518, and 519 are as follows : " Each tax collector shall enter in a well bound book, kept for the purpose, the date and number of each tax receipt issued by him, the name of the person paying taxes, and the amount paid, which entry shall be made at the time of issuing the receipt, and the amount of the aggregate of such receipts, entered on one page, shall be shown and carried forward to the next page, and so on, so that the amount collected can be seen at any time by an inspection of such book. Each collector shall also enter in said book, in immediate connection with said other entries, the amount of his payment of taxes to the State and county treasurers respectively, giving the date of such payment, so that it can be seen by reference to said book, whether the payment made to the State and county treasurers embraced all that he had collected, less his commissions ; and said book shall at all times be subject to the inspection of any State or county officer, or agent, or any citizen of the State. If any tax collector shall fail to keep such book, or

to make the required entries, or shall make any false entry therein, or shall refuse to exhibit such book for the examination of any one entitled thereto, he shall be guilty of a misdemeanor, and on conviction shall be punished accordingly." Sect. 518 : " It shall be the duty of each tax-collector to present the book required by the last section to be kept by him, to the board of supervisors when required ; and upon final settlement with the auditor of public accounts, said book shall be produced before him, and he shall indorse on it the fact, and the date of such presentation, and that he has examined the entries it contains of payments made to him of State taxes, and that such entries are correct ; and such book shall remain in the office of the tax collector, as a record of the office, when he goes out of office." Sect. 519 : " The book of duplicate receipts for taxes, above provided for, whether filled or not, shall, at the time of making his report to the board of supervisors, on the first Monday of March in each year, be delivered by the tax collector to the clerk of the chancery court, and be received, receipted for and carefully preserved, under such penalties for the non-observance of this requirement as are above provided for failure of either officer to do what is required in reference to such book."

It was therefore the official duty of the sheriff, to keep in his office the book provided for by said sections, and to deliver it to his successor in office, or to the clerk of the Chancery Court on his settlement with the board of supervisors in March of each year. His failure to do so was a breach of his official bond, for which the sureties, who are defendants in this suit, were liable. The State having proved the collection by the officer of the amounts sued for, introduced evidence of admissions made by him ; that he had not settled with the auditor, and of a promise made by him, a short time before the institution of this suit, to the attorney of the State, that he would satisfy the claim sued on ; and then introduced, as witnesses, the successor in office of the officer and the clerk of the Chancery Court, each of whom testified that the book so required to be kept was not among the records of their respective offices. The sheriff also testified that, though he knew his predecessor had kept such a book, it was not turned over to him when he took charge of the office. The defendants then were placed

in the attitude of being bound for the official acts of Johnston, who had certainly collected the money sued for, and who as certainly had abstracted from the office, of which he was the incumbent, the record which he was required to keep as an evidence of his dealings with the finances of the State; a record, which if properly kept, would have presented at a glance all the collections made by him, and all payments either to the county or the State.

The extent of the presumption which exists against one who suppresses or destroys evidence which could be offered against him, or against an officer who neglects to record, as required by law, a history of his acts, is not well settled by the authorities. In the leading case of *Armory* v. *Delamirie*, 1 Strange, 505; 1 Smith's Lead. Cas. (7th Am. ed.) 636, where the defendant had abstracted a jewel from its setting, and neglected to produce it on the trial, the jury was instructed to find a verdict for an amount equal to the value of a jewel of the finest water. In *Blann* v. *Beal*, 5 Ala. 357, which was a *qui tam* action against a clerk of the county court, to recover the penalty given for the illegal issuance of a marriage license, it was said that while ordinarily the burden of proof would be on the plaintiff to establish the fact that the license was issued without the consent of the parent, yet, as by the statute the clerk was required to record such consent, as evidence of the fact that it had been given, and as it was shown that no record of such consent appeared, the burden of proof was upon the clerk (the defendant) to show that such consent had been given. In *Hardon* v. *Hesketh*, 4 H. & N. 175, the defendant refused to produce in evidence his own deeds, and because of such refusal it was said that the evidence of the plaintiff, which was confessedly insufficient, warranted a verdict in his favor. In the case at bar, the defendant, Johnston, has committed a flagrant wrong; he has abstracted from the records of the office which he held the book that he was required by law to keep for the purpose of exhibiting the condition of his accounts, as the collecting agent of the State, with the auditor, who is the accounting officer of the State. He has unlawfully withdrawn from its proper place of deposit the evidence by which the plaintiff could have readily proved whether he had

or had not paid over the collections for which he is sued, and the natural inference is that he has done so because it does not contain entries favorable to himself. To permit any advantage to be thus obtained, either for himself or for his sureties, who are bound by his acts, would be a travesty upon justice.

We therefore do not find it necessary to decide upon whom the burden of proof was, upon the issue presented; for, if the burden was upon the plaintiff originally, the evidence of the breach, which was given by the plaintiff, taken in connection with the abstraction of the cash-book by Johnston, abundantly warranted the instruction by the court that the State had made a *prima facie* case, which ought to prevail in the absence of other evidence by the defendants. It would have been probably more proper for the court to have instructed the jury that the plaintiff by its evidence had made out a *prima facie* case against the defendants, which they were required to meet, or in default thereof that judgment ought to be given for the plaintiff. Wharton Evid. § 371. The distinction between such an instruction and one that the burden of proof is upon the defendants is so shadowy, the error (if it is an error) is so slight, that we would be unwilling to disturb a verdict in a case much more doubtful than the one at bar. Conceding the instruction to be wrong, the judgment is so manifestly right on the evidence that it ought not to be disturbed. *Tush Ho Yo Tubby* v. *Barr*, 45 Miss. 189; *Wilson* v. *Kohlheim*, 46 Miss. 346; *New Orleans Railroad Co.* v. *Burke*, 53 Miss. 200.

*Judgment affirmed.*